UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

UNITED STATES OF AMERICA,


                v.                                          **DECISION AND ORDER**
                                                                18-CR-32-A

JAWAYNE WATKINS,
                            Defendant.

─────────────────────────────


On October 19, 2020, defendant Jawayne Watkins was convicted of four narcotics-related offenses after a seven-day jury trial.  Defendant Watkins moves pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal notwithstanding the jury's verdicts.  He primarily challenges the legal sufficiency of evidence that his possession with intent to distribute or distribution of a mixture of heroin and a fentanyl analogue caused the serious injury or death of an overdose victim.  For the reasons stated below, the Court finds that the jury's guilty verdicts were supported by legally sufficient evidence.  The defendant's motion pursuant to Rule 29 for a judgment of acquittal is therefore denied.

Defendant Watkins also moves for a new trial pursuant to Fed. R. Crim. P. 33. In support of his new-trial motion, the defendant supplements his insufficiency of the evidence arguments with argument that he was denied a fair trial due to the Court's COVID-19-related health and safety protocols.  After due consideration, for the reasons that are also stated below, the Court finds that the guilty verdicts were not

1

manifestly unjust.  The defendant's Rule 33 motion for a new trial is therefore also denied.

## BACKGROUND

In October 2020, defendant Watkins was convicted of one Count of conspiracy to possess with intent to distribute, or to distribute, 10 grams or more of heroin and 4-fluoroisobutyryl fentanyl, a fentanyl analogue, in violation of 21 U.S.C. § 846 (Count 1); two Counts of possession with intent to distribute or distribution of heroin and 4-fluoroisobutyryl fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and (b)(1)(C), respectively (Counts 2 and 3); and one Count of possession with intent to distribute or distribution of heroin and 4-fluoroisobutyryl fentanyl that resulted in a serious bodily injury or death, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 4).  The most serious offense, Count 4, stemmed from the defendant's role in an overdose death, and he went to trial facing a mandatory sentence of life imprisonment if convicted of that offense.

The defendant's post-trial Rule 29 and Rule 33 motions were timely filed, but after the trial and convictions, the defendant's relationship with his counsel broke down and new counsel was assigned to represent him.  On August 19, 2021, based upon a change in U.S. Department of Justice policy, and unrelated to the defendant's change of counsel, the United States withdrew a previously filed Information pursuant to 21 U.S.C. § 851 that had given the defendant formal notice that the United States would rely upon a prior drug conviction to trigger a mandatory life sentence for a conviction on the charge related to the overdose death.  Doc. No. 198.  Because the § 851 Information has been withdrawn, the defendant now faces

a statutory mandatory-minimum term of imprisonment of 20 years to life for that

conviction.  21 U.S.C. § 841(b)(1)(C).

## DISCUSSION

**Rule 29 Motion for a Judgment of Acquittal.**  In general, Rule 29 imposes

a "heavy burden" on a defendant challenging a conviction by a jury.  *United States v.*

*Cuti*, 720 F.3d 453, 461 (2d Cir. 2013).  A court may enter a judgment of acquittal:

> . . . only if the evidence that the defendant committed the
> crime alleged is nonexistent or so meager that no
> reasonable jury could find guilt beyond a reasonable doubt.
> In applying these principles, [the Court] review[s] all of the
> evidence presented at trial in the light most favorable to the
> government, crediting every inference that the jury might
> have drawn in favor of the government.

*United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016) (quotations and citations

omitted).  Rule 29 requires the Court to give substantial deference to a jury finding

as to "the weight of the evidence and the reasonable inferences to be drawn" from

the evidence.  *Id*.  (quotation omitted).  Not only "must [a court] credit every

inference that could have been drawn in the government's favor," but, in assessing

the sufficiency of the evidence, a court "must view the evidence as a whole."  *United*

*States v. Applins*, 637 F.3d 59, 76 (2d Cir. 2011).  And "where either of the two

results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must

let the jury decide the matter."  *Facen*, 812 F.3d at 286 (quotation and brackets

omitted).

Viewed "in the light most favorable to the government, with all reasonable

inferences drawn in its favor," *United States v. Rowland*, 826 F.3d 100, 105 n.1 (2d

Cir. 2016) (quotation marks omitted), evidenced introduced during defendant

Watkins' trial showed that that he and his co-conspirators were trafficking in heroin laced with 4-fluroisobutyryl fentanyl in this District between approximately June 2017 and November 9, 2017.

On July 13, 2017, the U.S. Department of Homeland Security--Investigations conducted a controlled purchase of heroin from the defendant using an undercover law enforcement agent and a cooperating witness.  The cooperating witness arranged to purchase approximately 15 grams of heroin from the defendant.  The undercover agent made the purchase, in the presence of the cooperating witness, and obtained both video and audio recordings of the purchase.  Laboratory analysis confirmed that the substance weighed approximately 15 grams, and that it contained heroin and 4-fluoroisobutyryl fentanyl, which is a fentanyl analogue.

This controlled purchase of heroin and 4-fluoroisobutyryl fentanyl was the subject of Count 2 of the Indictment against defendant Watkins.  Doc. No. 164, p. 2 (redacted version of Second Superseding Indictment, Doc. No. 42.)  Suffice it to say that the recordings, the testimony of the undercover agent and the cooperating witness, and the evidence of the chemical analysis of the substance purchased from the defendant, constituted more than legally sufficient evidence to prove beyond a reasonable doubt defendant Watkins' possession with intent to distribute and distribution of 10 grams or more of heroin and 4-fluoroisobutyryl fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  The defendant's conclusory challenge to the sufficiency of the evidence supporting this conviction and jury's drug-quantity finding merits no further discussion.

On November 9, 2017, Homeland Security--Investigations made a second

4

controlled purchase from the defendant.  On that day, the same cooperating witness was directed by the defendant to 384 Broadway in Buffalo, which was a halfway house where the defendant was required to stay while on New York State parole. The witness had been provided government funds to buy approximately 18 grams of heroin.

The defendant was subject to GPS location monitoring as a condition of parole, and GPS tracking data confirmed he was at the halfway house at the time of the purchase.  The cooperating witness wore a concealed audio recording device and obtained audio recordings while at the defendant's residence.  The cooperating witness also saw the defendant's girlfriend, A.C.[1], in the defendant's room, and she was recorded on the audio recordings made by the witness.

The defendant told the cooperating witness he had only 5 of the 18 grams of heroin that he had offered to sell to the witness.  He indicated he planned to go to the Riverside neighborhood to get more and that he would have the remainder of the 18 grams that night.  The defendant sold the 5 grams of heroin that he had at the time to the cooperating witness.  Later chemical analysis confirmed that this heroin was also laced with 4-fluroisobutyryl fentanyl.

The November 9, 2017 controlled purchase of heroin and 4-fluoroisobutyryl fentanyl was the subject of Count 3 of the redacted Indictment.  The Court specifically finds that the audio recordings, testimony of the cooperating witness, and the evidence of the chemical analysis of the substance purchased from the

---

[1]  The initials "A.C." refer to the deceased overdose victim.

defendant, were legally sufficient to prove beyond a reasonable doubt the defendant's possession with intent to distribute and distribution of heroin and 4-fluoroisobutyryl fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Once again, the defendant's challenge to the legal sufficiency of the evidence supporting the jury's verdict on this Count is conclusory and without merit.

Later on November 9, 2017, defendant Watkins did go to the Riverside neighborhood of Buffalo.  A.C. accompanied him, and the defendant dropped A.C. off at her mother's house.  During this visit with her family, A.C. did not use drugs, and did not arrange to buy drugs.  When the defendant returned to pick up A.C., they went directly back to the defendant's residence at the halfway house at 384 Broadway.

That night, A.C. overdosed and died at the halfway house.  Images recorded by a halfway house security camera during the early morning hours of November 10th showed the defendant carrying A.C.'s limp body from his bedroom to the bathroom across the hall.  When paramedics arrived, they attempted to revive A.C. but were unsuccessful.  Buffalo Police Department Homicide officers arrived to investigate and took photographs, some of which were also admitted into evidence.

After A.C.'s death, toxicology analysis showed that A.C. had heroin and para/meta fluroisobutyryl fentanyl in her system.  Para-fluroisobutyryl fentanyl is 4-fluoroisobutyryl fentanyl and meta-fluroisobutyryl fentanyl is 3-fluoroisobutyryl fentanyl. The toxicology analysis did not distinguish between the two isomers.  Two expert witnesses testified during the trial that the heroin and fentanyl analogue in A.C.'s system caused her death.

Arrests of persons supplied heroin by the defendant or his co-conspirators and related drug seizures during the summer and fall of 2017 showed that the defendant was selling heroin laced with 4-fluroisobutyryl fentanyl.  In Erie County, where Buffalo is located, only a handful of drug seizures have ever resulted in detection of 4-fluroisobutyryl fentanyl.  Nearly all were from the time period after the defendant was out of custody and on parole.

Defendant Watkins argues more specifically that insufficient evidence supports the jury's verdict on Count 1 that he conspired with anyone or that he was responsible for the substances that caused A.C.'s serious injury or death as charged in Count 4.  In resolving the defendant's Rule 29 motion, the Court must evaluate "the totality of the government's case, . . . as each fact may gain color from others." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (citing *United States v. Monica*, 295 F.2d 400, 401 (2d Cir. 1961) (Friendly, J.)).  And when the United States introduces circumstantial evidence it "need not 'exclude every reasonable hypothesis other than that of guilt.'" *Guadagna*, 183 F.3d at 130 (quoting *Holland v. United States*, 348 U.S. 121, 139 (1954)).  Applying these principles, the evidence during the defendant's trial was clearly sufficient for "any rational trier of fact [to] have found," beyond a reasonable doubt that the jury's verdicts and findings were supported by legally sufficient evidence.

It is well-settled that to sustain a conspiracy conviction, "there must be some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it."  *United States v. Gaviria*, 740 F.2d 174, 183

(2d Cir. 1984)).  Anika Williams testified that the defendant was supplying heroin to her and to others for resale.  Williams testified that she sometimes delivered controlled substances the defendant sold to others on his behalf.  The defendant taught Williams how to package drugs for resale.  And a cooperating witness testified that the defendant admitted that he wanted Williams to sell smaller quantities of drugs so that he could concentrate on bulk sales.

Two cooperating witnesses who were customers of Williams testified about purchasing heroin from her that she testified she obtained from defendant Watkins. Chemical analyses showed the mixture of heroin in both of these sales contained 4-fluoroisobutyryl fentanyl.

The evidence regarding Williams' role in the conspiracy charged in Count 1 established the defendant's agreement with Williams to sell controlled substances for resale knowing and specifically intending that she would possess it and distribute it to others.  The testimony of cooperating witness Erin Cameron, including his testimony about his routine distribution-weight purchases of heroin from the defendant, and about a seizure of heroin laced with 4-fluoroisobutyryl fentanyl from him, further supports the jury's guilty verdict on the conspiracy charge.  The Court finds the evidence admitted at trial about the defendant's drug-trafficking established beyond a reasonable doubt that he knowingly participated in the conspiracy violating 21 U.S.C. § 846 that he was charged with in Count 1, and that he had specific intent to accomplish its objectives of possessing with intent to distribute and distributing heroin and 4-fluroisobutyryl fentanyl.

Defendant Watkins suggests the jury's guilty verdict on the conspiracy charge was contrary to the evidence because Williams agreed during cross-examination by defense counsel that she was like an "independent contractor."  The Court is unpersuaded.  As noted above, when the United States proves a conspiracy by circumstantial evidence, the evidence "need not exclude every reasonable hypothesis other than that of guilt."  *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quoting *Holland v. United States*, 348 U.S. 121, 139 (1954).)   The jury had already heard Williams' testimony about her guilty plea to a federal drug-conspiracy offense based upon her conspiracy with the defendant.  The jury eventually heard and saw the evidence summarized above of Williams' participation in the conspiracy with the defendant, as well as Erin Cameron's.  The jury remained free not to adopt Williams' characterization during cross-examination of her drug-trafficking relationship with the defendant --- especially since it was instructed by the Court before its deliberations on factors that are useful to distinguish a mere buyer-seller relationship from that of co-conspirators.

Defendant Watkins more vigorously argues that the evidence admitted during the trial did not support the jury's conclusion that the mixture or substance ingested by A.C. before her serious injury and death contained 4-fluroisobutyryl fentanyl, as well as heroin, as was charged in Count 4.  Due to limitations of analytic equipment that was used for a post-mortem toxicology analysis relied upon the United States, the evidence identified meta/para-fluroisobutyryl fentanyl in A.C.'s system but did not distinguish between the presence of the meta isomer, 4-fluroisobutyryl fentanyl, and the para isomer, 3-fluroisobutyryl fentanyl.  The defendant insists that the

imprecision of the toxicology analysis that was introduced into evidence constructively amended the Indictment because it allowed the jury to convict him regardless of whether the heroin in A.C.'s system included 3-fluoroisobutyryl fentanyl when the Indictment returned by the Grand Jury specifically charged that it was 4-fluroisobutyryl fentanyl.

A constructive amendment of an indictment occurs when evidence at trial and the jury instructions "so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment". *United States v. Lisyansky*, 806 F.3d 706, 712 (2d Cir. 2015). But the amendment must be of an essential element of the offense to be a constructive amendment. *See United States v. LaSpina*, 299 F.3d 165, 181 (2d Cir. 2002). And an indictment is not constructively amended just because "a generally framed indictment encompasses the specific legal theory or evidence used at trial." *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003). The "proof at trial need not, indeed cannot, be a precise replica of the charges contained in an indictment." *United States v. Heimann*, 705 F.2d 662, 666 (2d Cir. 1983). "[S]ignificant flexibility in proof [is allowed], provided that the defendant was given notice of the 'core of criminality' to be proven at trial." *United States v. Patino*, 962 F.2d 263, 266 (2d Cir. 1992).

Here, defendant Watkins does not address how he was deprived of notice of the "core of criminality" of the evidence offered against him. That the drug mixture that allegedly caused the serious bodily injury or death of A.C. included 4-

fluroisobutyryl fentanyl, as was specifically alleged in the Indictment, was not an essential element of the death-resulted penalty enhancement in 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *See generally*, Leonard B. Sand, *et al*., 3 *Modern Federal Jury Instructions: Criminal*, Instruction 56-2 (2021); *Burrage v. United States*, 571 U.S. 204 (2014); *see United States v. Knuckles*, 581 F.2d 305 (2d Cir. 1978). The operative set of facts were the same whether A.C.'s serious injury or death ultimately resulted from heroin laced with 4-fluroisobutyryl fentanyl, 3-fluroisobutyryl fentanyl, or a combination of all three controlled substances. The core of criminality was the same.

In any event, there was substantial circumstantial evidence that the heroin A.C. used was laced with the 4-fluroisobutyryl fentanyl isomer charged in the Indictment, meaning that there was no discrepancy between the evidence and Indictment and no grounds for finding a constructive amendment or even a variance. The United States introduced testimony establishing that 4-fluroisobutyryl fentanyl was exceptionally rare in seized controlled substances in this geographic area and nationally. According to the testimony of a chemist employed by the Erie County Central Police Services laboratory, of the total of six controlled substance seizures analyzed by that laboratory that detected 4-fluroisobutyryl fentanyl, four were substances supplied to others by the defendant during the July to November 2017 time period at issue. All four corresponded to specific transactions proven during the defendant's trial.

The five grams of heroin purchased from the defendant by a cooperating witness in defendant Watkins' residence on November 9, 2017, less than 24 hours

before her death, contained 4-fluroisobutyryl fentanyl.  A.C. expressed a desire for drugs while the cooperating witness was purchasing those five grams.

The defendant told the cooperating witness he could have "the rest" of the 18 grams that the witness had arranged to buy after the defendant picked it up later that day.  Until her death, A.C. was with the defendant except for the short period when the defendant dropped her off at her mother's residence.  During that time period, she was with relatives and neither acquired nor arranged to acquire any controlled substance.  After that, she was with the defendant at his residence until her overdose.

Under all the circumstances proven during the trial, the Court finds that the defendant was shown by legally sufficient evidence to have been the source of the drugs detected in A.C.'s system during the post-mortem toxicology examination.  A rational jury could conclude beyond a reasonable doubt that A.C. ingested heroin laced with 4-fluroisobutyryl fentanyl that was either distributed to her by the defendant or that she took from his possession while he had the intent to distribute it.

Moreover, evidence of the severe overdose symptoms that afflicted A.C. before her death and the expert opinion evidence admitted during the trial established that her overdose on heroin and a fentanyl analogue was an independently sufficient factual cause of her serious injury or death.  The jury therefore had legally sufficient evidence to support its conclusion that the drugs A.C. obtained from defendant Watkins were a but for cause of her serious injury or death. The defendant's motion pursuant to Rule 29 for a judgment of acquittal is denied.

**Rule 33 Motion for a New Trial.**  Defendant Watkins seeks a new trial pursuant to Fed. R. Crim. P. 33 partly on the ground that COVID-19 related health and safety protocols the Court followed during his trial violated his rights to a fair trial.  Rule 33(a) provides, in part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  In general, the Rule "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice."  *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992).  But "[t]o grant [a Rule 33] motion, '[t]here must be a real concern that an innocent person may have been convicted.' "  *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 1997) (alteration omitted). The defendant complains of a Court requirement that prospective jurors and jurors wear surgical masks covering their noses and mouths during jury selection and trial.

Specifically, defendant Watkins argues that he and his counsel were unable to conduct effective voir dire because they could not adequately assess prospective jurors' facial expressions behind the surgical masks the Court had supplied to all prospective jurors.  Defendant made the same argument before jury selection began.  Doc. No. 146, pp. 4-5.  The court heard oral argument and denied the motion.  In light of the serious public health and safety concerns due to the COVID-19 pandemic, the Court found that its requirement that prospective jurors wear surgical masks was not an unreasonable impediment to effective voir dire and defendant's rights to effective voir dire would not be violated because of the mask mandate.

During voir dire, the defendant did not request additional questioning of any prospective juror based upon a concern that a surgical mask was impeding assessment of the prospective juror.  He did not ask that any prospective juror remove a mask while being questioned to facilitate assessment of the juror.  He sought no additional procedural safeguard of any kind.  When challenges for cause were raised and preemptory challenges exercised --- the time during which the Court may have been able to address any specific concerns --- the defendant did not express any reservations about the efficacy of any challenges or the impartiality of the jury.  He nevertheless renews his earlier argument that his rights to a fair trial were violated.

A defendant is entitled to a trial "by an impartial jury."   U.S. Const. amend. VI.  And jury selection is the "primary means" of protecting that right and of insuring that the jury is "free from . . .  predisposition about the defendant's culpability." *Gomez v. United States*, 490 U.S. 858, 873 (1989).  The Constitution does not require a perfect voir dire procedure, but it does guarantee a defendant a free and fair opportunity to expose prospective jurors' biases and prejudices and a free and fair opportunity meaningfully to exercise peremptory challenges. *See generally*, *United States v. Barnes*, 604 F.2d 121, 137-41 (2d Cir. 1979).

Defendant Watkins cites no authority for his argument that the opaque surgical masks were an unconstitutional impediment to effective voir dire.  As other courts that have addressed this argument have found, "[b]eing able to see jurors' noses and mouths is not essential for assessing credibility because demeanor consists of more than those two body parts since it includes the language of the

entire body." *United States v. Trimarco*, No. 17-CR-583 (JMA), 2020 WL 5211051, at *5 (E.D.N.Y. Sept. 1, 2020) (quotation omitted).  The defendant and his counsel were able to observe and assess prospective jurors' body language and voices during voir dire.  While "being able to see a potential juror's full facial expressions may be tactically preferable, . . . the Court is unconvinced that it is required by the Constitution."  *United States v. Crittenden*, No. 4:20-CR-7 (CDL), 2020 WL 4917733, at *8 (M.D. Ga. Aug. 21, 2020).  Based on this reasoning, the Court finds that the defendant's rights to a fair and impartial jury were not violated by the Court's requirement that prospective jurors wear opaque surgical masks during jury selection.

The defendant similarly argues that he was deprived of a fair trial because he and his counsel were unable to assess jurors' reactions to trial proceedings because of the surgical masks.  Again, the defendant cites no authority in support of his argument, and he has alleged no instance of prejudice he suffered in support of the argument.  The Court followed health and safety protocols set forth in a Western District of New York General Order[2] regarding the COVID-19 pandemic, as well as recommendations by a COVID-19 Judicial Task Force[3].  The protocols were cumbersome, but the Court finds that while they may have impeded the defendant's ability to assess jurors' reactions to openings, witness examinations and cross-examinations, exhibits, counsels' objections, argument, rulings, and closing

---

[2]  https://www.nywd.uscourts.gov/sites/nywd/files/COVID-19%20General%20Order%20-%20Extension%20to%20December%2024%2C%202020.pdf

[3]  https://www.uscourts.gov/sites/default/files/combined_jury_trial_post_covid_doc_6.10.20.pdf

arguments, they did not deprive the defendant of his Sixth Amendment right to a fair trial or his right to due process.

The defendant suggests that the jurors' masks also violated his right to a public trial, although he does not explain how.  Giving the defendant the benefit of this additional conclusory argument, the Court finds that his right to a public trial was not violated based on the reasoning in *United States v. Donziger*, No. 11-CV-691, 2020 WL 4747532, at *3-4 (S.D.N.Y. Aug. 17, 2020).

Finally, the defendant argues that jurors' concerns about the COVID-19 pandemic were such a large distraction during the trial that the trial was fundamentally unfair.  On or about the fourth day of proof, the Court's courtroom deputy clerk advised the Court and the parties that a juror told the deputy clerk that counsel were not always following COVID-19 health and safety protocols during the trial.  The Court discussed the comment with counsel, but they were unable to identify what may have prompted the juror's comment.  The Court made no further inquiry of the juror or jury --- none was sought by either party and the Court elected not to inquire further on its own --- and encouraged counsel for both parties to follow all the health and safety protocols that had been adopted.

The defendant moved for a mistrial due to the juror's observation on the ground that the juror's concerns about COVID-19 may have shown that the jury was paying inadequate attention to the trial because of concern about COVID-19.  He did not seek removal of the juror who made the comment, and the Court did not seriously consider removal of the juror on its own.  In any event, the Court did not

find grounds to conclude the jury was seriously distracted from the trial and denied the motion for a mistrial.

Defendant Watkins now points to no other reason to think that the jury may have been so distracted by their concern about the COVID-19 pandemic that he was denied a fair trial. Nothing happened later during the trial to support the defendant's speculation that the jury was distracted. There were no further comments to Court staff from any of the jurors. And based upon the Court's observations, the jury was generally very attentive during the trial. After the trial, the Court met with the jurors to thank them for their service, and none expressed a COVID-19-related concern. The Court therefore finds the jury was not unduly influenced by any COVID-19 concerns and that the defendant received a fair trial.

The Court has also considered defendant Watkins' Rule 29 arguments that the evidence against him was legally insufficient as additional possible grounds for the Court to order a new trial pursuant to Rule 33. The Court is permitted under Rule 33 to evaluate the weight of the evidence and the credibility of witnesses. *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). The Rule gives the Court "broad discretion . . . set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001). Nevertheless, after consideration of the collective weight of the evidence and of the defendant's arguments for a new trial, the Court finds no manifest injustice in the jury's verdicts as to any of the convictions, the jury's drug quantity finding, or that the defendant's drugs were a but for cause of the serious bodily injury

or death of A.C.  The defendant's motion for a new trial pursuant to Rule 33 is therefore denied.

## CONCLUSION

For the reasons stated above, the motions of the defendant, Jawayne Watkins, for a judgment of acquittal pursuant to Fed. R. Crim. 29 and for a new trial pursuant to Fed. R. Crim. P. 33, Doc. No. 160, are denied.

**IT IS SO ORDERED.**


_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   August 24, 2021